UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAVID A. CASTELLAN et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No.: 2:13-cv-02027-RCJ-NJK |
| vs. | )<br>) |
| BANK OF AMERICA et al., | ) **ORDER**<br>) |
| Defendants. | )<br>)<br>) |

This proceeding arises out of the alleged breach of a home loan modification agreement. Pending before the Court is a Motion to Dismiss the First Amended Complaint ("FAC") (ECF No. 36). For the reasons given herein, the Court denies the motion.

I.   **FACTS AND PROCEDURAL HISTORY**

A.   **Purchase of the Property and Default**

Plaintiffs David A. Castellan and Cecilia Castellan purchased real property located at 1801 Candle Bright Drive, Henderson, Nevada 89074 (the "Property") in June 2001 for $242,000. (FAC ¶¶ 12–13, May 1, 2014, ECF No. 32). To finance the purchase of the Property, Plaintiffs obtained a loan, secured by a deed of trust ("DOT"). (*Id.* ¶ 14). In 2007, Plaintiffs refinanced the mortgage on the Property for $300,000 at an interest rate of 5.75% over 15 years, representing a monthly mortgage payment of about $2,778 ("2007 Refinance Agreement"). (*Id.* ¶ 15). Bank of America, N.A. ("Bank of America") owned the loan at all relevant times until

assigning the DOT to Federal National Mortgage Association ("Fannie Mae") on October 22, 2012. (*Id.* ¶ 17; Mot. Dismiss Ex. D, May 30, 2014, ECF No. 36-4).

In mid-July 2008, Plaintiffs requested that Bank of America agree to a home loan modification, extending their current 15-year mortgage to a 30-year mortgage in order to reduce their monthly mortgage payment. (FAC ¶ 18). Bank of America rejected the request, representing to Plaintiffs that because Plaintiffs were not at least 90 days delinquent on their mortgage, a modification was not possible. (*Id.* ¶ 19). Relying in part on Bank of America's representation, Plaintiffs stopped making their monthly mortgage payments in July 2009. (*Id.* ¶ 21).

### B.     Modification

At a foreclosure mediation in February 2010, Bank of America agreed to modify Plaintiffs' mortgage, extending it to 30 years with an interest rate of two percent for the first five years and increasing interest rates for the remaining years. (*Id.* ¶ 27). A letter from Bank of America memorializing this trial modification agreement stated that Plaintiffs would make payments of $1,240.84 for three months, beginning in March 2010. (*Id.* ¶ 28). Plaintiffs made the three agreed-upon payments in March, April, and May 2010. (*Id.* ¶ 29).

In May 2010, Bank of America sent Plaintiffs a final home loan modification agreement ("Final Modification"), indicating a new monthly mortgage payment of $1,304.50 beginning in June 2010. (*Id.* ¶ 30). Plaintiffs made monthly payments of $1,304.50 from June to November 2010. (*Id.* ¶ 35). Cecilia signed and returned the Final Modification on August 24, 2010 and Bank of America counter-signed on August 3, 2011. (*Id.* ¶¶ 32–33). David did not sign the Final Modification.[1]

---

[1] Plaintiffs separated for a period of time beginning in October 2009 but later reconciled. (*Id.* ¶ 23 n.7). While they were separated, Cecilia was the only spouse paying the mortgage and

In December 2010, Bank of America increased Plaintiffs' monthly mortgage payment to $1,354.65. (*Id.* ¶ 37). Plaintiffs paid this amount in December 2010. (*Id.*). On the advice of Plaintiffs' counsel, Plaintiffs paid $1,254.50 for their January 2011 payment. (*Id.* ¶ 38). When Cecilia tried to pay the next month's payment, Bank of America informed her they would not accept the payment because of an incorrect amount paid for January 2011 and that the modification had been cancelled. (*Id.* ¶ 39). In reliance on Bank of America's representation, Plaintiffs did not make mortgage payments for February, March, or April 2011. (*Id.* ¶ 40).

Sometime in April 2011, Bank of America advised Cecilia to begin making payments again in the amount of $1,304.50. (*Id.* ¶ 41). Thereafter, Plaintiffs received conflicting information from Bank of America regarding the status of their loan. Plaintiffs first received a letter from Bank of America indicating that their "loan was [up-to-date] and current" as of April 15, 2011. (*Id.* ¶¶ 42–43). Despite Bank of America's representations that their loan was "current," Plaintiffs received a mortgage statement dated April 28, 2011 indicating an amount due of $2,909.71 with an amount past due of $50,083.00. (*Id.* ¶ 45). In reliance on Bank of America's previous advice, Plaintiffs disregarded what they believed to be an inaccurate mortgage statement and made mortgage payments in the amount of $1,304.50 in May, June, and July 2011. (*Id.* ¶¶ 44, 46).

In a letter dated July 15, 2011, Bank of America indicated to Plaintiffs that the monthly mortgage payment of $1,305.74 was not enough to bring the loan "current" while the total amount then due was $5,514.63. (*Id.* ¶ 48). In August 2011, Plaintiffs' monthly mortgage statement reflected a monthly amount due of $1,305.74 and a delinquent amount of $3,917.22. (*Id.* ¶ 47). In a letter dated August 24, 2011, Bank of America indicated that the total amount

---

negotiating the modification. (*Id.* ¶¶ 24, 26).

due on Plaintiff's loan was $5,114.64 and that payment received would be applied to the loan. (*Id.* ¶ 50).

Plaintiffs paid approximately $1,700 extra in August 2011 to try to make up for the missed February, March, and April 2011 payments. (*Id.* ¶¶ 49, 51). However, a letter from Bank of America dated September 1, 2011 still showed a total amount due of $5,114.64 despite these extra payments. (*Id.* ¶ 52).

From September 1, 2011 until September 2012, Plaintiffs made monthly mortgage payments of $1,305.74. (*Id.* ¶¶ 54, 56). Plaintiffs also made one additional payment in March 2012 of $1,033.23. (*Id.* ¶ 55). During this time, Plaintiffs continued to receive letters from Bank of America representing a total amount due of over $5,000. (*Id.* ¶¶ 55–56).

Plaintiffs' loan servicing was transferred to Seterus effective October 1, 2012. (*Id.* ¶ 57). In late October, Plaintiffs "sent a qualified written request to Seterus disputing the amount transferred by [Bank of America]." (*Id.* ¶ 58). In response, Seterus informed Plaintiffs that they were unsuccessful in obtaining a response from Bank of America regarding the "loan issues." (*Id.* ¶ 59). Plaintiffs continued to make their mortgage payments from October 2012 to January 2013. (*Id.* ¶¶ 59–60).

In a letter dated January 7, 2013, Seterus informed Plaintiffs that their latest loan payment "could not be accepted due to the loan status and to contact customer service." (*Id.* ¶ 60). A notice of default and election to sell was recorded in early February 2013. (*Id.* ¶ 61). Plaintiffs allege that the incorrect balance on the mortgage Bank of America transferred to Seterus is causing Seterus to attempt to foreclose on Plaintiffs' Property. (*Id.* ¶ 62).

C.  **The Present Case**

Plaintiffs sued Bank of America, Seterus, and Fannie Mae in Nevada state court. Bank of America removed. Seterus agreed to postpone a foreclosure sale of the Property previously

scheduled for December 23, 2013.  The Court granted Bank of America's motion to dismiss because it failed to present a coherent statement of facts in accordance with Rule 8's notice pleading standard.  Specifically, the Court found that Plaintiffs' inconsistent labeling made it impossible to determine whether Plaintiffs had adequately alleged that Defendants' interactions with any single Plaintiff created a valid modification agreement.  The FAC alleges: (1) breach of contract; (2) promissory estoppel; and (3) contractual breach of the implied covenant of good faith and fair dealing.  Bank of America, joined by Seterus, has moved to dismiss for failure to state a claim.  Plaintiffs have filed a notice of voluntary dismissal of Fannie Mae.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Unlike the word's lay definition, "plausibility" under Rule 8(a) is not a factual test of the likelihood a plaintiff's allegations are true, but a legal test of whether the allegations, if assumed to be true, entitle the plaintiff to relief. Under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable legal theory (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the legal theory he has specified or implied (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

**III.     ANALYSIS**

The Court finds that Plaintiffs have cured the issues of clarity identified in the Court's previous order.  Now that Plaintiffs identify each Plaintiff's role in the alleged misconduct charged, the Court will address the sufficiency of the allegations.

**A.     Breach of Contract**

In Nevada, a breach of contract claim requires showing "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008) (Pro, J.) (quoting *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920–21 (D. Nev. 2006)).  According to Bank of America, because David did not sign the Final Modification, there was no acceptance to form a valid contract.  Bank of America also argues that because Plaintiffs had a pre-existing duty to pay their mortgage prior to any loan modification agreement, there was no consideration to form a valid contract.  Finally, Bank of America argues Plaintiffs suffered no compensable damages attributable to Bank of America.

"A contract modification is valid if there is mutual assent and consideration." *Corral v. Homeeq Servicing Corp.*, No. 2:10-cv-465, 2010 U.S. Dist. LEXIS 111208, at *11 (D. Nev. Oct. 6, 2011) (Navarro, J.).  Mutual assent is an "agreement or meeting of the minds of the parties as to all essential elements." *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1063 (D. Nev. 2012) (quoting *Keddie v. Beneficial Ins.*, 580 P.2d 955, 957 (Nev. 1978)).

Bank of America argues that because David did not sign the Final Modification, the Final Modification does not constitute a valid contract.  The Final Modification stated that Plaintiffs agreed:

> "[t]hat all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who

>no longer has an in interest in the property need not sign this Agreement . . .; or (iii) the Lender has waived this requirement in writing."

(Opp'n Mot. Dismiss Ex. 1, June 16, 2014, ECF No. 39-1, at 4).[2] Moreover, the Deed of Trust stated that Plaintiffs agree that one of them may agree with the lender, without the consent of the other, to modify the terms of the loan only if the other borrower did not sign the Promissory Note. (*See* Mot. Dismiss Ex. A, May 30, 2014, ECF No. 36-1, at 10, ¶ 13). Both Plaintiffs signed the Promissory Note and the Deed of Trust required for the 2007 Refinance Agreement. (*See id.* at 14; FAC ¶ 14). Therefore, Defendants argue, because both Plaintiffs signed the 2007 Refinance Agreement documents, both were obligated to sign the Final Modification under the above-referenced provisions.

The Court finds that because the agreements represent community debt (Plaintiffs were married at all relevant times) Cecilia was authorized to enter into the modification on David's behalf. Defendants cannot be heard to complain that David did not agree to be bound by the modification, because he is bound to it by law, whether he signed it or not. *See Norwest Fin. V. Lawver*, 849 P.2d 324, 327 (Nev. 1993).

B.   **Promissory Estoppel**

Under the doctrine of promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *American Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39, 41 (Nev. 1969) (quoting Restatement of Contracts § 90).

---

[2] Plaintiffs attached the Final Modification to their Opposition. The Court may consider the document under the "incorporation by reference doctrine" because the Final Modification is central to Plaintiffs' claims and its authenticity is not questioned. *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Plaintiffs' pleading of promissory estoppel is essentially a reiteration of their breach of contract claim. (*See* FAC ¶¶ 75–82). Plaintiffs allege that they relied on Bank of America's representations that it would not foreclose and that there had been a modification. (*See id.* ¶¶ 21, 39, 40, 43, 44, 45, 46). The Court will not dismiss this claim.

### C.     Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing

The elements of breach of the implied covenant of good faith and fair dealing are: (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed plaintiff a duty of good faith and fair dealing; (3) the defendant breached the duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). "The covenant of good faith and fair dealing 'only applies after a binding contract is formed.'" *Byrd v. Am. Home Mortg. Servicing, Inc.*, No. 2:13-cv-01864-GMN-CWH, 2014 U.S. Dist. LEXIS 97922, at *13 (D. Nev. July 18, 2014) (Navarro, J.) (citing *Crellin Techs., Inc. v. Equipmentlease Corp.*, 18 F.3d 1, 10 (1st Cir. 1994)). The Court will not dismiss this claim. Plaintiffs have sufficiently alleged in the alternative that even if Bank of America did not violate the letter of the modification, which required David's signature to be valid, it violated its spirit by refusing to honor it even though David was bound to it by law.

### CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 36) is DENIED.

IT IS SO ORDERED.

Dated this 25th day of March, 2015.

_____
ROBERT C. JONES
United States District Judge